May it please the court. My name is Jennifer Friel and I represent Reginald Wallace. This case presents a sort of math problem. How should district courts calculate the deadline for a habeas petition when a Mississippi inmate pled guilty to the underlying crime of conviction? In Mississippi, when a defendant pleads guilty, they don't have the right to appeal to another higher Mississippi court, but they do have the right to appeal to the U.S. Supreme Court. And that is why we believe that an extra 90 days should be added to the calculation for when a habeas petition is due for this type of individual. The state of Mississippi, however, says those 90 days should not be added. Now this matters to Mr. Wallace because he's currently serving a 30-year sentence for his role in an armed robbery. But the record shows that his original trial counsel failed to convey to him a plea deal that would have capped his sentence at 15 years. So these 90 days are important. We did prepare some demonstratives for today. If they're at the bench, you can look in your folder. We basically made larger for the court a chart that we had in our original brief on page 18. And it is a timeline, and it shows why these 90 days are so important. And we've highlighted here in yellow, if the 90 days are included, Mr. Wallace's petition was actually a month early. If they're not, it was late. And this amounts to reversible error. It was error because . . . The one-year limitations period had run because she didn't consider that the 90 days applied. Is that the gist of what she said? It's a bit confusing, but . . . I agree that it's a bit confusing. What she had not realized is that for the state collateral . . . She told the judge that, with regard to his state collateral proceeding, and where we say the 90 days apply are in direct review. I'm sorry. But I agree that she told the judge . . . She said, I didn't realize 90 days didn't apply to his collateral proceeding? Correct. So she never said to the judge, I didn't realize 90 days didn't apply to direct review? Correct. That is how I read the question. Don't answer by correct. What did she tell the judge? She told the judge that she did not realize that in state collateral proceedings, he didn't have the 90 days. So she never said to the judge, I did not realize that he didn't have 90 days on direct review? That is my understanding of the record, Your Honor. And it is . . . Is that some sort of invited error, or some sort of judicial estoppel, or something that would preclude this point being raised here? I know we go through the lens of a certificate of appeal, which the judge sui sponte decided without stating any reasons. So we don't know what his thinking necessarily was, but that doesn't preclude our making a decision about that. The key difference . . . it was not invited error. The key difference being that his habeas counsel in the district court was discussing the state collateral review, and here on appeal, after the COA was granted by the one-judge panel, we're talking about 90 days on direct review. And, Your Honor, it's important, looking at the sui sponte COA from the district court, since you raised it, you know, looking at it, he did raise it sui sponte, but with regard to the two prongs, he did say, and I have it right here in front of me, it's page 114 of the record, that the petitioner had demonstrated that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right. So that's why . . . That's not what the district judge said, did he? This is the order from the district court. That's the first prong. Read that order to us, because I thought he simply said, sui sponte, the COA is denied. Read the rest of it to us. Sure. So with the two prongs, then he goes on to say he has not shown that jurists of reason would . . . Procedural error. Exactly. And so that's why we're here, on the procedural error. And we do acknowledge that we're on plain error review. So we accept . . . Why do you acknowledge plain error review? Because this 90 days in the direct appeal, you know, Judge Lee, the master judge, didn't have that argument in front of him, that this 90 days should have applied to the direct appeal. And one of the other items I have for you, but you all are very familiar with the statute, but I do want to actually look to the statute, which is why our position is that this is a plain error. 2244 D1A allows for the one-year period of limitation. And it says that it shall run from the latest of, the date on which the judgment became final by the conclusion of direct review, or the expiration of the time for seeking such review. So we're on direct review, or the expiration of time for seeking such review. And we cite many cases in our brief, Lawrence v. Florida, which is a 2007 U.S. Supreme Court, many cases where courts have said, yes, after you get that final decision from a state court, 90 days, 90 days to seek. I've read a certiorari. So we assert that the error is plain. And as to why it affected his substantial rights, it goes back to this order we were just looking at. He does have a claim for ineffective assistance of counsel. And again, the first prong, you know, Judge Lee did say that the court would find it debatable whether the petition states a valid claim of the denial of a constitutional right. So this affects Mr. Wallace. He's doing 30 years, and his lawyer didn't tell him about a plea offer that would have capped him at 15. And that, of course, gets us to the discretionary fourth prong. And I'd like to just tell the court we're not asking for a rehearing or a retrial. We're just asking that Mr. Wallace get what he should have gotten day one, which is a review of his petition on the merits. So with regard to this court's discretion, we think it is appropriate for him to have a chance to make his merits argument to the federal district court. And looking back at this chart, we have this—of course, it's told when he's seeking his state collateral review. So we put in this gray box here all the things he did on his state collateral review. And you can see that Mr. Wallace has been saying and has been trying to get courts to listen to his claim. He has been telling the state courts. He has been trying to get relief. And this is a case where exercising discretion on the fourth prong is appropriate. I want to now turn to some of the arguments that Mississippi states with regard to this 90 days and explain to the court why those should be rejected. First, in its response brief, Mississippi says that, well, Mr. Wallace had the opportunity to raise any federal issues in his state collateral proceeding. But going back to the plain language of D-1A, we're not talking about the collateral review. We're talking about direct review to the U.S. Supreme Court. And also, that state collateral review time, again, it's told. It's taken out of the timeline. So to the extent that they are suggesting that the 90 days should not apply because Mr. Wallace had an opportunity to raise those issues in the state collateral proceeding, that just doesn't pass the sniff test. The next issue that they raise is that Mr. Wallace didn't have a cognizable claim at the U.S. Supreme Court. Essentially, they're reading a merits argument. Well, that's what I wanted to ask you. Is there anything in the record as to what claim he would have made on direct review to the United States Supreme Court? Yes, there is. And we address this in our reply brief. He did raise a Fourth Amendment plain view issue at the state district court – I'm sorry, the state trial court. Right. And essentially, a Fourth Amendment violation. The record suggests – The search of his home, that was – and that's raised for the first time in your reply brief. Is that in response to something the state has said? Exactly. Is that why you put it in your reply? Exactly, Your Honor. They suggested that there was a merits argument and that we had to meet Supreme Court jurisdictional standards. So our reply brief explains two reasons why those are – it's a bad idea to have a merits argument. One is it's not supported by the case law. They're asking this court to say something that I haven't seen in any other case. And number two, it's also unworkable to have pro se inmates have to decide whether or not they satisfy the U.S. Supreme Court jurisdictional standards. And then also we look through the record. And sure enough, Mr. Wallace did have a Fourth Amendment argument. The trial court – and I understand our state trial courts are very busy. But the trial court said, I'm not going to listen to your constitutional argument unless you go to trial. I'm a good enough lawyer. I think I could have said that that was – forced him into an involuntary plea. That is something I could have made a colorable argument to a court to say this is a due process violation when you've got a Fourth Amendment violation. And you're saying he was going to have to go to trial before you'll even consider it. Now, would the Supreme Court have granted that? I don't know. I know you probably got it in your brief, but what's your best case on the fact that even though the state does not allow direct review in a state appellate court of a guilty plea, what's your best case for saying, well, that doesn't matter. He still could have sought cert from the Supreme Court and is entitled to the 90 days. You know, the best case is this case I previously mentioned, which is the Lawrence v. Florida that says this. We also have a string of cases where – and this is one reason I don't – I understand why perhaps this was missed at the district court. It's in a lot of cases as, oh, and you get 90 days. You have your decision. You get 90 days. But as a long analysis of why that happens, we weren't able to find. What we have is courts saying you get an extra 90 days. There is a Louisiana case that comes to mind and then a court of criminal appeals case out of Texas. So that Louisiana case is Butler v. Cain. The court of criminal appeals case would have been the Flanagan case. So courts just say, yes, you had a decision from the highest court you could have in the state, and you get 90 days. There is no merits argument. There is no let's decide whether or not you could have met the U.S. Supreme Court's jurisdictional standards. And that is the final demonstrative I have for the court, which is 28 U.S.C. 1257. And this is what essentially the state of Mississippi is asking pro se inmates to decipher. You know, final judgments or decrees rendered by the highest court of a state in which a decision could be had may be reviewed by the Supreme Court by a writ of certiorari. And it talks about treaties and statutes, the validity of state questions. And it goes down to the right title, privilege or immunity, especially set up or claimed under the Constitution. It would be a misjustice to require inmates to have to prove they satisfy the merits for a Supreme Court case. The easy rule and the rule that Mr. Wallace is suggesting is that you add 90 days. If you're under the statute and you couldn't appeal to a higher Mississippi state court, you add 90 days. That's an easy rule. That's something that can be applied. It's in a footnote. The previous argument we were talking about footnotes, but it is in a footnote of our brief. Just the fact how many of these habeas petitions are filed by pro se inmates. We're asking for a rule that they can easily apply. And we're asking for Mr. Wallace because he has an argument that deserves to be heard. He did have constitutionally ineffective assistance of counsel in his original trial. And we ask that that be heard. I'd like to just close since we— He didn't have an original trial. Right. Trial court, Your Honor, trial court. I want to just close my opening with a quote from the plain error case out of the Supreme Court, the Rosales-Morales case. Of course, looking at the Fifth Circuit's treatment of the fourth prong of plain error review. And the court said in broad strokes, the public legitimacy of our justice system relies on procedures that are neutral, accurate, consistent, trustworthy, and fair. And that provide opportunities for error correction. That's what we ask, Your Honor. All right. Thank you. We'll hear from the state, Ms. Grant. May it please the court. Bridget Grant on behalf of the Attorney General of the state of Mississippi, and I represent the respondents in this appeal. The district court correctly dismissed the petition as untimely under section 2244D based on the undisputed date of finality of petitioner's guilty plea conviction. The well-established law applied by the Mississippi federal courts for the on finality of a guilty plea conviction and controlling precedent on equitable tolling for miscalculation of the limitations period. State again why cert couldn't have been sought from this guilty plea since Mississippi foreclosed any direct appeal to a state court. Yes, Your Honor. Here the trial court is not the highest state court in which a decision could be had on petitioner's claims. There's no other state court. What's the other highest state court where the plea could be challenged on direct appeal? Not on direct appeal, Your Honor, but it does distinguish petitioner from a case where the petitioner has no means of review of his claims. So here we recognize that postconviction is a separate avenue aside from direct appeal. You lose your 90 days. I mean, why would a state be allowed to choose to cut a person out of that 90-day window by simply saying, well, you can't go to a state court and then argue, well, you didn't have that extra 90 days because you couldn't appeal to a state court. Why would a state be allowed to do that under the, under ADPA? Well, Your Honor, so I think there's two points to be made to that. Here, first, is that the petitioner chose to plead guilty and waive his right to appeal. And as a matter of state law, he's not entitled to appeal to the Mississippi Supreme Court, which would impact the United States court's jurisdiction from there. He's not allowed to appeal under federal law? Well, so any appeal directly from that order of sentence, the problem there is that order of sentence disposed of no claims for the petitioner. So there would be no decision that would arguably be reviewable. But back to my second point to your first question, if I may answer that, under ADPA, one of the interests that ADPA is designed to protect is that of comity. And so it ensures that the state courts are given the first opportunity to address any constitutional issues before those claims are presented to the United States Supreme Court. And so that, here, petitioner does have a route to do that. It is on a separate route. It is by post-conviction. But then he's able to proceed through the state court system to the Mississippi Supreme Court and ultimately to the United States Supreme Court from there. This collateral review took a total of, I think, 461 days. The collateral review took a total? In his state court collateral review, I think it took 461 days. So it was pending for, I believe it was 1,792 days is what he received for statutory tolling. Yes, Your Honor. Over three years. Yes. Up on four years for collateral review. Yes, Your Honor. You can't conceive of any reason that someone who pleads guilty in a state that does not allow direct review of a guilty plea could, from the get-go, seek a writ of certiorari from the Supreme Court. You can't conceive of any basis for doing that. Well, particularly here, petitioner did file the Fourth Amendment motion in the trial court. But then he turned around and pled guilty and waived the right, any rights incident to trial in any evidentiary matters that would have been decided. So here we only have the order of sentence that disposed of no claims. Petitioner hadn't yet properly raised his claims in state court and gotten a decision that disposed of any of those. So as a threshold matter, it's . . . Is that a matter of state law that he waived it under state law by not pursuing it when he tried to file it in district court? And the court said, I'm not going to listen to that now unless you go to trial. Is there, is that a matter of state law that he couldn't have raised that in an appeal? No, Your Honor. I don't think it's a matter of state law, but it would, I think, raise several difficulties. I mean, whether or not that was an interlocutory order, whether or not . . . I mean, the motion was never disposed of by the trial court. But it's Respondent's position here as a threshold matter that this court lacked jurisdiction over the specific finality argument under the initial COA grant because the district court never considered it. How do you know he never considered it? His order doesn't go into any specifics. Don't we assume he did? When he doesn't go into any specifics, we assume he did. Well, the report . . . He ruled sua sponte. You're not entitled on a procedural basis to a COA. So, the way this issue . . . So, Petitioner filed the petition and believed that the petition was timely. Respondent's moved to dismiss the petition, arguing that the conviction became final on the date that he was sentenced because under the language of the statute, 2244D1A, the fact that we look at state law here to see when direct review concluded, and under the statute, that's the date that he was sentenced, and then under this court's decision in Roberts, when a petitioner stops the appeal process prior to reaching the state court of last resort, then the conviction becomes final when the time for seeking further direct review in state court expires. 2254 doesn't use direct review in state court. It just says direct review, doesn't it? 2244D1, Your Honor. It does say direct review, and in . . . It doesn't say direct review in state court. It says direct review. Yes, Your Honor, it does say that. Do you agree that direct review can be a writ of certiorari to the Supreme Court? It can be, but under the court's own rules, 13.1 and 1257A, the court reviews a decision from the state court of last resort. And here, that is not the trial court. And in Gonzales v. Thaler, the United States Supreme Court interpreted section 2244D1A and explained . . . well, held that the judgment becomes final at the expiration of the time for seeking direct review when the time for pursuing direct review in the Supreme Court or in state court expires. So there, the petitioner rejected . . . the court rejected the petitioner's argument that his petition was timely because it was filed within one year of when his time for seeking the Supreme Court's review, as opposed to the state court's review, expired. And the court said, the Supreme Court can only review judgments of a state court of last resort. And because the petitioner did not appeal to the state Supreme Court, the Supreme Court lacked jurisdiction to review . . . Why isn't the trial court the court of last resort when he couldn't appeal to the Mississippi Intermediate Court of Appeals? Well, yes, Your Honor, but this does distinguish him from having no other avenue to raise that claim. He does have it on post conviction. But if Your Honor . . . if Your Honors have concerns over the merits argument, what . . . the district court's decision certainly did not amount to plain error. And so that's the standard that we're looking at here as petitioner concedes . . . Well, we, of course, determine our standard of review, but your . . . Yes, Your Honor. . . . position is it's plain error review just as their position is. Well, our threshold issue is that the initial motions judge lacked COA over the specific finality issue. His COA grant was very specific. He said because it's unclear whether or not a criminal defendant who pleads guilty in Mississippi would be entitled to the 90 days. And under this court's decision in Black, granting a COA in the circuit court on an issue not previously denied COA in the district court is beyond the court's jurisdiction. And in this court's decision in Johnson v. Quarterman, this court there said that although a petitioner raised his equitable tolling argument in the district court . . . but then he tried to come back and raise a new statutory tolling argument on appeal . . . this court held that because petitioner did not raise that argument in the district court or request a COA from the district court on that issue . . . that this court has no authority to grant a COA for that claim. He didn't have an opportunity to request a COA. It was sua sponte denied in the order denying . . . Yes, Your Honor. So, if this court determines that it does have jurisdiction over the specific finality issue, then whether or not he's still entitled to the 90 days . . . this court should still affirm because the district court did not plainly err in its finality determination. Our court granted a COA. Yes, Your Honor. Because this is a new specific argument on finality that was never presented to the district court. Petitioner never argued in the district court that his petition was timely. He conceded the untimeliness of his petition. Then our court granted a COA. That's an interesting question here where he didn't raise it in district court. Our court granted a COA. Yes. Saying that we're going to hear this, we're going to hear this appeal. Yes, Your Honor. And so, if this court determines that the initial motions judge that that was proper, then we are looking at it for plain error review is the standard to review this issue. And, we have at least three authorities that support the district court's decision and show why its finality determination makes sense, was reasonable and was a straightforward application of Section 2244 D1A. First is the statute itself. Second, as I mentioned earlier, is the Supreme Court's decision in Gonzales v. Thaler, which interpreted that statute and said that the judgment becomes final at the expiration of the time for seeking direct review. And, that's when the time for pursuing direct review in the Supreme Court or in state court expires. And, then third, we have this court's decision in Roberts where this court held that if the petitioner stops the appeal process before reaching the state court of last resort, then the conviction becomes final when the time for seeking further direct review in state court expires. So, this court looks to state law for a determination of how long a petitioner has to file a direct appeal. And, Mississippi law is applicable here. Here, petitioner chose to stop his appeal process by pleading guilty. And, as a matter of state law, he wasn't entitled to an appeal. So, in turn, for purposes of Section 2244 D1A, petitioner's conviction became final on the date of sentencing because that is the date that his time for seeking direct review in state court expired. As a matter of federal law, he could have filed a petition for writ of sorcery. Even if it was meritless, he could have filed it. So, Your Honor, I understand that argument. And, I think if we accept the logic behind that point, looking at what we already know from these authorities and in the context of direct appeals in Mississippi, in the related context of that, any petitioner who does have a right to appeal in that context isn't automatically entitled to the 90-day period. Sure, they could always file a cert petition, but under Roberts, which is what the district court cited in support of the date of finality here, we already know that even a petitioner on direct appeal isn't automatically entitled to the 90 days. What if he had filed a petition for writ of sorcery and the Supreme Court took six months before it denied it? Are you saying he wouldn't have been entitled to when the Supreme Court denied it? In other words, more than 90 days were used. The Supreme Court, for some reason or the other, held it or lost it or whatever else. Are you saying that his time for review would have begun when he pleaded guilty as opposed to when the Supreme Court, six months later, says your petition for writ of sorcery is denied? Here, Your Honor, the date that the conviction became final was on the date that he was sentenced. I understand, but that's a hypothetical question. Yes, Your Honor. If the Supreme Court had taken six months, are you saying that, oh no, you don't get that six-month extension or tolling on your one year to seek review in a federal court? You're not making that claim, are you? Under your hypothetical, if I may ask you to repeat the first part, under your hypothetical, you're saying if the court ultimately dismissed it as untimely? Well, they denied, what, 99.9% of petitions for writ of sorcery, or 90%, and if the court had taken six months, are you saying that that wouldn't have been tolled for six months? Not just 90 days, but for six months, three more months. Not in this situation for a guilty plea in Mississippi, Your Honor. And I think, you know, we do have the typical situations that are covered by Roberts where we look at state law to determine how long the petitioner has to file a direct appeal. For example, if under state rules, the petitioner fails to seek rehearing in the Mississippi Court of Appeals on direct appeal, then he's only entitled to an additional 14 days. He doesn't automatically get the 90 days because under state law, state rules, that's when his time expires. Same situation if a petitioner fails to seek cert from the Mississippi Supreme Court. He's not automatically entitled to a 90-day period to seek cert to the United States Supreme Court because he theoretically could. We look at state law to determine when that period ends. So here, the district court's conclusion that petitioner's limitations period began to run when petitioner was sentenced at the expiration of his time to seek direct review of his conviction in state court was not an obvious error or even error at all. And by petitioner's own submissions to this court and his characterization of the issue as, quote, endemic to the Mississippi federal courts, that defeats any argument that this is a clear, obvious error. They cited to at least 15 cases between 2019 and March of 2021. But again, the analysis that the court is undertaking here for the finality determination makes sense, and it shows that this is the standard application that the court uses. And this court has denied a COA in at least two of those cases submitted by the petitioner. But here, the district court applied 2244 D1A, observed that by statute there is no direct appeal from a guilty plea in Mississippi, and then cited this court's decision in Roberts for that to determine that petitioner's judgment became final on the date that the trial court sentenced him on his plea. If there are no more questions on this point, I would like to just briefly touch on our third point. Should this court reach petitioner's alternative argument? And this court should dismiss the motion to expand the COA for lack of jurisdiction or alternatively deny the motion for failure to satisfy the requirements for a COA where remand for reconsideration of petitioner's equitable tolling argument with new counsel would be futile. The same reasoning that applied to consideration of the threshold issue applies here, and that's under Black. This court lacks jurisdiction to consider a COA motion on an issue that was not presented to the district court. And also under Johnson v. Quarterman, this court has no authority to grant . . . Equitable tolling was presented to the district judge, wasn't it? Isn't that what counsel said? It was my mistake, and I'd ask that you grant equitable tolling. Yes, Your Honor, but that was a separate and distinct argument from what petitioner is now trying to argue in this court. They're following the district court's unfavorable decision where the district court explained in the report and recommendation that Mr. Wallace does not allege that he was actively misled by any lie or deception on the part of counsel. Now, on appeal, he's trying to make that argument. And he's arguing that there's an alleged conflict of interest based on Christensen. And in the brief, we set out that Christensen is in opposite in this context factually. Here, there is no conflict of interest. The counsel missed the deadline to timely seek habeas relief, and she was unaware of her miscalculation until she received the motion to dismiss. Upon reflection of the arguments, she argued for equitable tolling based on her miscalculation of the limitations period. And even petitioner's non-record emails submitted to this court in support of his motion for COA show that former habeas counsel, again, following dismissal of the petition, maintained that she had miscalculated the limitations period and even volunteered to refund part of the fee due to her mistake. So each of those points, I would point the court to the record at 81 through 85, which is petitioner's response to the motion to dismiss, where counsel conceded the untimeliness and argued for equitable tolling based on her miscalculation. And then the objections, again, at 101 through 105. But even if the petitioner could show an extraordinary circumstance, he still can't show that he diligently pursued his rights, and he has to prove both. Here, petitioner initially waited 10 months to file his pro se motion for PCR motion in the trial court. And then following the issuance of the mandate on his appeal on post-conviction, the petitioner waited an additional four months. And under Melancon and this court's recent decision in Smith, that wouldn't justify to establish that. I see that my time is out. May I briefly conclude? You can have a concluding sentence. For the reasons argued here today and those detailed in the respondent's brief, we would ask that this court vacate the COA and dismiss the appeal if it finds that that was issued without jurisdiction. But if the court does have jurisdiction to consider the finality issue, we would ask this court to affirm. Because the district court did not plainly err in its finality determination. And if the court does reach the alternative argument, we ask that the court dismiss that motion for lack of jurisdiction or alternatively deny. Thank you. All right. Thank you, Ms. Grant. Appreciate it. Back to you, Ms. Friel, for rebuttal. Mississippi's position here is just unworkable. The idea that someone could—someone in Mr. Walz's position who had pled guilty in a trial court could file a writ of—sought a writ of certiorari, and it would take the Supreme Court six months. But their position still is that the habeas clock starts running when the sentence was announced? It doesn't work. That same person would go to a state court and start the collateral proceeding? And what's that state court judge going to say? Don't you still have something pending at the U.S. Supreme Court? It's completely unworkable. What is workable is a bright-line rule that says if you plead guilty and don't have the ability to go to a state appellate court, you get 90 days. It fits within 44D1A, the time when it expires for seeking higher review. And let's not forget that a court always has jurisdiction to decide if it has jurisdiction. The U.S. Supreme Court itself—and we cite two cases in our brief, Illinois v. Gates and the Cox Broadcasting Corporation case, where the justices of the U.S. Supreme Court are arguing over whether they have jurisdiction. In that Illinois case, it's a 5-4 decision with two dissents and a concurrence. But yet Mississippi wants a pro se inmate to have to decide when they're just determining the deadline. They're just trying to find out when their petition is due. But they're trying to read a merits argument into the test. And it's not workable. With regard to the certificate of appealability issue, the existence of this COA is jurisdictional. The content is not. There is already a COA in this case. And as Your Honor, Judge Barksdale pointed out, the district court doesn't say much about the COA. It doesn't say much about how it came to the decision that the petition was untimely either. It does say—it goes over the two prongs. And as I mentioned before, actually said that with regard to the constitutional issue of ineffective assistance of counsel, that essentially there was an issue there. But on this procedural issue, the jurist could not debate on whether or not this was timely. And unfortunately, the court there didn't have our argument about the 90 days and why this should apply. And we accept that we're on plain review because of that. But that is the effect of what happened at the district court. The COA is here, and we have to live with plain error review. And I think our brief and my previous argument explained why we meet that standard here. And, you know, I have a hard time with the idea that Mr. Wallace hasn't diligently pursued his rights. I have a hard time with that because of this chart and all that he's done to try to be heard. I have a hard time with the fact that he paid for counsel below, counsel that we are asserting in our brief here, you know, was conflicted and made some obvious mistakes. But he diligently did pursue these. Was it 10 months, four months, however much? The guy was in prison, and he made sure to do all of these things on this chart. And he deserves the right to have a court hear the merits of his argument. There are no further questions. I'll yield my remaining minute. All right. Thank you. This is thrilling. Thank you, Mr. Chair and counsel for the state. Appreciate your briefing on it. Some interesting questions, to put it mildly. I hope the more COA cases we have, it seems like we would have decided it all. But they're all very nuanced, and so we appreciate your help. And, Judge Stewart, I did want to acknowledge my young lawyer here, Emily Ryan, who helped me with all the briefing. And we're a pro bono case, and she did a lot of the work here. Welcome to the court, and we certainly appreciate the able work of court appointed and pro bono counsel in all these cases. So thank you. The case will be submitted, and we'll get it decided. Thank you.